UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        Criminal No. 19-CR-20126

        Honorable Terrence G. Berg

KYLE LINDEMANN,

        Defendant.

## GOVERNMENT'S SENTENCING MEMORANDUM

**I.    INTRODUCTION**

On March 29, 2019, Kyle Lindemann pled guilty to an Information charging him with possessing with the intent to distribute controlled substances, specifically "MDMA." (R. 11). Lindemann proceeded by way of plea agreement, where the parties agreed that the guideline range, based on the offense conduct and criminal history, was a range of 15-21 months. (*Id. at* Pg ID 28). U.S. Probation, in finding a more significant criminal history score, correctly determined the appropriate guideline range to be 18 to 24 months. (Presentence Investigation Report "PSR" at pg. 19).

Lindemann managed a sophisticated drug trafficking moniker "Like a Sir" (or identity) on the Darkweb. Through this moniker, Lindemann distributed harmful substances like "MDMA" and "GHB." Moreover, despite the fact Lindemann has a

1

history of drug trafficking convictions, he has never served any significant period of incarceration. As such, the Government respectfully requests that this Court, in recognizing the guideline range contemplated by the parties, sentence Lindemann to a term of incarceration of at least 18, but not more than 21 months.

## II.     STATEMENT OF FACTS[1]

Lindemann operated a Darkweb moniker, "Like a Sir." This vendor account was used to sell various types of drugs on the Darkweb, to include MDMA, Xanax, GHB, and Adderall. Lindemann would normally receive payment in cryptocurrencies, such as "bitcoin." The cryptocurrencies function like any other monetary instrument, but they are not tethered to financial institutions, or central banks, as is the case with traditional currency. Individuals can sell and exchange illicit goods, such as MDMA, on the Darkweb, and pay for it using cryptocurrency; however, the seller still requires an exit point to convert the cryptocurrency to dollars. That is how Homeland Security Agents identified Lindemann.

Drug traffickers often do not use legitimate exchanges that operate in terms where they know their customers. Rather, they will find individuals who serve as money transmitters on the Darkweb. This further conceals the underlying criminal activity and makes identification and attribution particularly difficult.

---

[1] The Statement of Facts was prepared from law enforcement reports, written and video recorded statements of the defendant, as well as communications from law enforcement officers.

In October of 2017, Homeland Security Agents exchanged 2,000.00 Dollars for Bitcoins from an individual they later identified as Lindemann. Agents were also able to identify his Darkweb vendor account, "Like a Sir," and eventually, confirmed that he used the account to sell drugs.

On May 15, 2018, agents purchased controlled substances from Lindemann's Like a Sir account. Later, agents watched as Lindemann left his home in Birmingham and placed the packages into the mail. Agents were able to identify additional packages being sent from Lindemann.

On May 23, 2018, a search warrant was conducted on Lindemann's home, and a drug distribution network was uncovered. Agents found MDMA, scales, packaging materials, mailing parcels, and currency. Lindemann admitted he operated the "Like a Sir" vendor account, and that he had been doing it for approximately 6 months.

### III. SENTENCING GUIDELINE CALCULATIONS AND OTHER RELEVANT 3553(a) FACTORS

Congress has provided, through 18 U.S.C. § 3553(a), the relevant objectives and factors to be considered by sentencing courts in imposing a "sentence sufficient, but not greater than necessary." Those factors are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation, and rehabilitation); (3) the kinds of sentences legally available; (4)

the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution. In *United States v. Rita*, 551 U.S. 338 (2007), the Supreme Court restated that the goals of the United States Sentencing Commission in formulating the Sentencing Guidelines are to carry out the objectives of 18 U.S.C. § 3553(a). Despite being advisory, the Guidelines remain an important factor in sentencing. As the Supreme Court stated in *Rita*, "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Id.* at 345.

### A. Lindemann's history and characteristics support a guideline sentence.

Lindemann has had multiple opportunities to confirm his illicit behavior. His criminal history, detailed throughout the PSR, is summarized below:

- On May 3, 2014, Lindemann pled guilty to Controlled Substance Possession of Analogues, and received a sentence of two days in custody, and on year of probation.

- On December 12, 2015, Lindemann pleaded guilty to Possession of Schedule I or II Controlled Substances, and received a sentence of 90 days in custody and two years of probation.

4

- On August 6, 2016, Lindemann pleaded guilty to Unlawful Use of a Controlled Substance and received a two year probation sentence. The period of probation terminated on February 8, 2019.

(PSR at pg. 9). Despite the fact he has three felony drug convictions, Lindemann has avoided incarceration in each and every instance, with one 90 day jail sentence. Moreover, the timeframes of many of these convictions indicate that he was taking advantage of the probationary sentences by continuing to deal drugs. For example, Lindemann had his most recent probation terminated on February 8, 2019. Therefore, Lindemann committed the instant offense while already on probation. Moreover, the manner in which he committed the offense, via use of the Darkweb, indicates a level of sophistication that was not previously present in his drug trafficking endeavors.

Lindemann has received multiple opportunities to better his behavior and stop dealing drugs. Instead of staying out of trouble, Lindemann used the periods of probation to become a harder-to-catch, more sophisticated drug trafficker. As such, a sentence within the recommended guideline range is appropriate.

**B. A guideline sentence will provide adequate deterrence.**

Both specific and general deterrence are achieved via a guideline sentence. Specific deterrence, preventing Lindemann from engaging in this type of conduct in the future, can only be accomplished via a term of incarceration. As was more fully

discussed in the previous section, Lindemann has simply had too many opportunities at probation to support any credible belief that a <u>fourth</u> attempt at probation will be any different than the previous three.

General deterrence is also important, where, as is the case here, Lindemann was operating a drug distribution network in relative anonymity. The Darkweb has proven to be a safe haven for all sorts of criminal elements, to include drug trafficking, because of the difficulty law enforcement has with policing it. Considerably more law enforcement resources are expended identifying and prosecuting an individual like Lindemann, as compared to a "traditional" drug trafficking case. A guideline sentence sends a clear a clear message to individuals in the Darkweb marketplaces that a law enforcement presence exists, and that individuals who facilitate and profit via illicit means on the Darkweb will have to answer for their actions.

**C. The nature and circumstances of dark market investigations.**

The nature and circumstances of the offense conduct support a guideline sentence. Lindemann's conduct is distinguishable from the typical drug trafficking case because of the sophistication involved. As such, there are considerable difficulties in determining the full scope of his criminal activity.

One such difficulty comes with the efforts agents spent attributing a username, or moniker, to the conduct of the actual individual behind it. Lindemann acted in a

way to conceal his activity from the detection of law enforcement. For example, return addresses for the packages he was mailing, which contained controlled substances, were traced back to an innocent business in Dearborn, Michigan, which had no knowledge of, or participation with, the drug trafficking scheme.

An additional difficulty was the fact that Lindemann did not use conventional banking systems. Lindemann was selling narcotics for cryptocurrencies, and then, using unlicensed money transmitting businesses to "cash out." Homeland Security Agents only became aware of Lindemann via undercover work. Not using financial institutions makes it impossible to understand the full scope of exactly how much Lindemann received in illicit proceeds throughout the length of the scheme. It also makes it significantly more difficult to recover or disgorge criminals of the illicit assets obtained through their drug trafficking.

One final difficulty comes from determining the appropriate drug amount. Lindemann is only being held responsible for the actual drugs recovered via the mail and from his residence. We can say with certainty, based on Lindemann's confession, that he was engaged in this conduct for a considerably longer time period. However, because of end-to-end encrypted messaging services, you are unlikely to find the traditional "drug ledger" with quantities and sales recorded. Lindemann's abuse of the mail system allowed him to maintain a drug trafficking operation, considerable in scope, without having to depend on storing large

quantities of narcotics in his residence, as you would regularly see with a stash house.

### D.  The need to avoid sentencing disparities.

Because of the ubiquitous nature of the internet and Darkweb drug trafficking, individuals like Lindemann have a much larger reach.  They can order larger quantities of drugs from outside of the jurisdiction, and can literally send drugs anywhere the mail system delivers to.  Guideline sentences reflect the serious nature of the charged conduct, and at the same time, ensure that similarly situated defendants are being treated the same, regardless of what jurisdiction they happen to be apprehended in.

## IV. CONCLUSION

For the reasons stated above, the United States recommends a term of incarceration of **between 18 and 21 months** followed by a term of supervised release.

                                      Respectfully submitted,

                                      MATTHEW SCHNEIDER
                                      United States Attorney

                                      _____
                                      Robert Jerome White
                                      Assistant United States Attorney
                                      211 W. Fort Street, Suite 2001
                                      Detroit, MI  48226
                                      Robert.White@usdoj.gov
                                      (313) 226-9620
                                      (IL6304282)

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Timothy Dinan

*[signature]*
_____
Robert Jerome White
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Robert.White@usdoj.gov
(313) 226-9620
(IL6304282)